

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:07cr252 (LMB) |
| | ) | 1:10cv816 (LMB) |
| ABDUL HAMEED | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Abdul Hameed, acting pro se, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Motion to Vacate Sentence) [Dkt. No. 396], in which he alleges that he was denied his Sixth Amendment right to the effective assistance of trial and appellate counsel and that his sentence is "unconstitutional" because it is "procedurally and substantively unreasonable." He has also filed a Motion for Leave to Amend and/or Supplement 28 U.S.C. § 2255 Motion (Motion for Leave to Amend) [Dkt. No. 402] in which he seeks to raise a claim that his "guilty plea" was not voluntary and to add an additional claim of ineffectiveness by trial counsel. Because all the allegations in the Motion to Vacate Sentence are meritless, the Motion will be dismissed and the Motion for Leave to Amend will be denied without a response from the United States.[1]

---

[1] When a § 2255 motion is filed "the judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the

I. Procedural Background

On June 21, 2007, Hameed, along with co-defendants Bilal Saleem, Naim Aslam Mann, Basir Chand, Jawad Ahmad, and Arshad Hussain, was indicted in a 12 count indictment alleging various violations including mail fraud in violation of 18 U.S.C. § 1341, conspiracy in violation of 18 U.S.C. § 371 and participating in a continuing financial crimes enterprise in violation of 18 U.S.C. § 225. An Assistant Federal Public Defender was first appointed to represent Hameed, and represented him at his arraignment on July 6, 2007 [Dkt. No. 54]. By July 13, 2007, Hameed had retained Peter Greenspun and Jonathan Shapiro, two preeminent Northern Virginia criminal defense lawyers. On September 20, 2007, a superseding indictment [Dkt. No. 89] was filed, which added four additional counts. On October 16, 2007, the second superseding indictment [Dkt. No. 120] was filed adding four more counts.

On October 19, 2007, Hameed's motion for release from custody was denied and his counsel's oral motion to withdraw was granted. Hameed's arraignment on the second superseding indictment was continued to October 23, 2007. On October 25, 2007, defendant filed a "Notice of Withdrawal of Not Guilty Plea" which included among other bizarre statements "I do not give Jurisdiction to this Court over my body" and "I do not reside in

---

moving party." Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings.

a federal territory." [Dkt. No. 134]. In light of Hameed's conduct, the Court granted the government's motion for a competency examination, which was held at FCI Butner. Hameed was diagnosed with Adult Antisocial Behavior, but was found mentally competent to stand trial.

Although Hameed insisted on proceeding pro se, and was allowed to do so, the Court appointed William B. Cummings, another extremely experienced, well-respected defense attorney to act as standby counsel; however, Hameed stubbornly refused to accept any assistance from Cummings. Instead, he filed numerous meritless pro se pleadings, most of which attacked the jurisdiction of the court. See, e.g. Defendant's Motion to Dismiss. [Dkt. No. 273].

All the co-defendants in the case plead guilty, each admitting in their Statement of Facts that Hameed was the leader of an extensive criminal enterprise, resulting in losses of over $3 million to the victims. Hameed's trial was set for May 5, 2008. On the morning of the trial, sixty jurors were present in the courtroom awaiting voir dire when Hameed advised the Court that no facts were in issue and that his only defense was that the Court lacked jurisdiction to try him. After delaying the trial and going through an extensive discussion with Hameed, the Court dismissed the jury and found Hameed guilty of all 21 charges in the indictment, based on the uncontested facts proffered by the government and after rejecting Hameed's

meritless jurisdiction arguments. On July 25, 2008, Hameed was sentenced to a total of 212 months incarceration, followed by five years of supervised release, $2,100 in special assessments, and a requirement to pay $3,133,984.44 in restitution.

Acting pro se, Hameed appealed his conviction.[2] As the Fourth Circuit noted in its unpublished opinion affirming his conviction and sentence: "His [Hameed's] informal brief contains numerous nonsensical and meritless claims, most challenging the jurisdiction of the district court. We find most of his [Hameed's] claims without legal basis and dismiss them as frivolous." United States v. Hameed, 325 Fed. Appx. 272, 273 (4th Cir. 2009). The only claim addressed by the Fourth Circuit was Hameed's assertion that his conviction was invalid because he did not understand the charges. Citing to Hameed's dismissal of his retained counsel, refusal to utilize the resources of standby counsel, and improper responses to the Court's efforts to ensure that he understood the rights he was waiving when he continued to insist that he was not disputing the facts, the Fourth Circuit concluded: "to the extent Hameed did not understand the charges against him, he had only himself to blame. He spurned all help

---

[2] In his Motion for Leave to Amend, Hameed argues that standby counsel was ineffective in failing to file a Notice of Appeal. The record shows this claim is meritless because Hameed filed two Notices of Appeal and did get appellate review of his conviction and sentence. See Dkt. Nos. 290, 292, and 365. The record also shows that Hameed prosecuted his appeal pro se, therefore, there is no basis upon which he can claim that appellate counsel was ineffective.

and advice that was offered and continued to pursue frivolous claims even after they had already been denied on more than one occasion." Id. 2-3.

Because Hameed did not pursue further review in the United States Supreme Court, his conviction became final on July 28, 2009. He timely filed his Motion to Vacate Sentence on July 22, 2010.

## II. Standard of Review

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under 28 U.S.C. § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result [ ] in a complete miscarriage of justice." United States v. Addonizio, 422 U.S. 178 (1979). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived are

therefore procedurally defaulted unless the movant can show cause and actual prejudice. <u>United States v. Frady</u>, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. <u>See</u> <u>United States v. DeFusco</u>, 949 F.2d 1114, 120-21 (4th Cir. 1991).

To establish ineffective assistance of counsel, a movant must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The test requires proof of two things: (1) deficient performance, and (2) prejudice. To prevail on his claim of ineffective assistance of counsel, Hameed must first demonstrate that his counsel's performance was not "reasonably effective," meaning that it "fell below an objective standard of reasonableness." <u>Id.</u> at 687-88. Next, he must show that there is "a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

### III. Hameed's Motion to Vacate Sentence

#### A. The Jaikaran Claims

The first two claims in Hameed's Motion to Vacate Sentence center around the alleged activities of a non-governmental person, Dr. Jaikaran. Specifically, Hameed alleges that in May 2007 he met Jaikaran while they were both being held in a Houston, Texas detention center. He claims that he listened to

lectures by Jaikaran about the law, fell under his influence and later on, even after Hameed was moved to Virginia, was forced by Jaikaran to take the meritless legal positions reflected in his pro se motions and courtroom behavior. He also appears to argue that Jaikaran became his shadow attorney.

Hameed alleges in his first claim that his retained and standby trial counsel denied him his Sixth Amendment right to effective counsel by failing to investigate the influence Jaikaran was exerting over Hameed, and by failing to report Jaikaran to the bar for unlawful practice of law. The second claim alleges that Hameed was denied due process under the Fifth Amendment "by being represented by a non-lawyer [Jaikaran] and being found competent to stand trial when [he] was under duress and coercion from an extortion scheme."

Hameed describes his first contacts with Jaikaran as occurring while they were both incarcerated in Texas. Hameed was arrested on or about May 25, 2007, on an arrest warrant issued in this district. By July 3, 2007, he was in the Eastern District of Virginia for arraignment. At most, therefore, he was incarcerated with Jaikaran for less than six weeks. It is also clear from the record that Hameed was initially cooperative. For example, he retained Peter Greenspun and Jonathan Shapiro, two preeminent defense attorneys, who filed several motions on his behalf from at least July 11, 2007 through October 19, 2007.

Moreover, in June 2007 after being arrested, and therefore closest to the time he would have been in direct contact with Jaikaran, Hameed cooperated with Pretrial Services, providing background information. See Presentence Report (PSR) at ¶¶ 84, 93, 105, and 107. He also spoke with a Pretrial Services officer in July 2007. Id. at ¶ 94. However, by October 2007, Hameed's hostile attitude toward counsel and the Court and his unwillingness to defend himself was well exemplified by his pro se pleadings, rejection of any assistance from counsel, and eventual refusal to be interviewed by the probation officer who was preparing the PSR.

The Jaikaran claims are inherently incredible. Other than his self-serving statement attached to the Motion to Vacate Sentence, Hameed has offered no evidence to support his allegation about the involvement of Jaikaran in this case. Although Hameed states that it was Jaikaran who came up with the warped legal theories about the court's lack of jurisdiction, the record shows that the type of rhetoric used by Hameed in this case, with frequent references to the U.C.C. and other civil law elements, are consistent with the "Freeman" philosophy of the law. Hameed had used similar Freeman-type rhetoric well before the time period in which he claims to have first met Jaikaran, as reported in the PSR. ("Choice point also lists a U.C.C. filing dated March 10, 2008 . . . The debtor is listed as "Abdul Hameed,

a trust entity" and the secured party is identified as "Abdul Hameed."). Id. at ¶ 108.

Even if there were some truth to Hameed's claims about Jaikaran's influence, there is no evidence in this record of either trial or standby counsel having any knowledge of Jaikaran extorting Hameed into adopting a Freeman defense or acting as Hameed's shadow attorney. For example, Hameed states that he "tried to indicate to his counsel that he was being threatened without Dr. Jaikaran knowing about it." Motion to Vacate Sentence at 5C. That statement leads to the conclusion that Hameed never told his counsel about the threats. That conclusion is corroborated by Hameed's later statement that " . . . The very cleverness of Dr. Jaikaran's extortion scheme made movant fearful of mentioning the first word about the threats being made against him." Id. at 5D. By essentially admitting that he did not tell his counsel about any threats, Hameed undercuts any legitimate claim that his counsel's performance was less than competent. As the Supreme Court has observed:

> "The reasonableness of counsel's actions may be determined by the defendant's own statements or actions. Counsel's actions are usually based quite properly on informed strategic choices made by the defendant."

Strickland, 466 U.S. at 691.

Despite not telling anyone about Jaikaran's threats, Hameed argues that his counsel as well as the prosecutor, court and

9

mental health practitioners "should have recognized that something was amiss by the massive quantities of professionally word processed pleadings coming from an incarcerated inmate." Id. at 5D. The law does not require counsel to conduct the kind of guess-work suggested by Hameed. Because there is no evidence in this record that Hameed ever alerted anyone to Jaikaran's threats or the "legal advice" he provided, Hameed does not meet his burden of showing that either his retained or standby counsel provided ineffective representation.

Lastly, it is worth noting that Hameed was not a naive person, who would be easily intimidated. Hameed, who was 46 years old when he was convicted, was no novice to the federal criminal justice system. In 2002, while represented by counsel, he pled guilty in this district to conspiracy to defraud financial institutions, and was sentenced to 13 months incarceration, later reduced under Fed. R. Crim. P. 35(b) to 10 months incarceration followed by three years of supervised release. Hameed was also described by all the cooperating co-defendants as the mastermind of the extensive continuing financial crimes enterprise at issue in this case. In furtherance of that enterprise Hameed created numerous false identities and businesses, assigning these identities to the co-conspirators, who over a period of 24 months, received over $5 million of gross receipts from their fraudulent activities.

Given Hameed's experience with the criminal justice system and ability to organize and manage a complex criminal conspiracy, his claims about being manipulated and intimidated by this Dr. Jaikaran are wholly incredible.

B. Equal Protection Claim

In his third claim Hameed alleges that he was denied his Fifth Amendment right to equal protection of the law in that his Muslim background was used unlawfully when Jaikaran threatened to accuse Hameed of being a Muslim extremist and intimidated him with stories about how the government treats such extremists. He also complains that the Court's decision that he wear a stun belt at the first day of trial "scared [him] to death" and constituted cruel and unusual punishment. Id. at 5F.

Neither claim is a basis for collateral relief. Hameed has neither alleged nor presented any evidence that Jaikaran was a government agent. As a private party, any threats Jaikaran made would not involve the Fifth Amendment's due process clause, or the Fourteenth Amendment's equal protection clause, both of which are protections against governmental power, and not the kind of activities by a private party described in Hameed's motion. See Public Utilities Commission of D.C. v. Pollak, 343 U.S. 451, 461 (1952)(holding that the Fifth Amendment "concededly appl[ies] to and restrict[s] only the Federal Government and not private actors"). See also, Corrigan v. Buckley, 271 U.S. 323, 330

11

(1926)("The Fifth Amendment is a limitation only upon the powers of the General Government, and is not directed against the action of individuals.")(internal citations and quotations omitted); Harding v. Kellam, 155 F.3d 559 (4th Cir. 1998)(unpublished)("The Fourteenth Amendment can be invoked only if state action is present. Similarly, the Fifth Amendment, standing alone, requires the presence of a federal actor.")(citing West v. Atkins, 487 U.S. 42, 49 (1988); San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee, 483 U.S. 522, 542 (1987)).

The decision to require Hameed to wear a stun belt during his trial was based on the Court's concern that Hameed would not abide by the Court's instructions and would unduly burden the jury with his antics. The colloquy with the bench on May 5, 2008, during which Hameed insisted on posing repetitive questions to the Court is a clear example of the conduct that would have turned any trial into a circus. That conduct also is clear proof that wearing the belt in no way intimidated Hameed or caused him not to contest the facts proffered by the government. As with the first two claims, this one is equally meritless.

C. Sentencing issues

In Hameed's last claim he alleges procedural and substantive due process errors in his sentencing. Specifically, he complains that he was deprived of an opportunity to enter a plea agreement, and that he did not receive any reduction to the offense level

for acceptance of responsibility due to the "legal advice and strategies" developed by Jaikaran.

There is no recognized constitutional or statutory right to a plea agreement. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977)("But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." See also, United States v. Bissette, 30 F.3d 131 (4th Cir. 1994)(unpublished)(citing Weatherford). Hameed's refusal to cooperate with counsel and to acknowledge the jurisdiction of the Court obliterated any opportunity to enter a plea agreement, and to receive an acceptance responsibility adjustment to his offense level. This claim, therefore, has no merit.

Hameed's complaints about the sentencing process fail on both procedural and substantive grounds. Alleged errors in sentencing, such as failure to apply certain offense level reductions, should be raised on direct appeal. A movant can avoid the procedural default only if he can show "cause and prejudice . . . or . . . that a miscarriage of justice would result from refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, at 493 (4th Cir. 1999), cert. denied. 529 U.S. 1010 (2000). On this record, Hameed cannot show cause for his procedural default. He cannot blame his appellate counsel because he chose to represent himself, without counsel. Nor can he show any prejudice because

13

the record fully supports the sentence he received. Over $5 million were involved in the conspiracy, resulting in losses of more than $3 million to the financial institution victims. Hameed was clearly the mastermind and manager of the conspiracy for which he properly received a leadership enhancement and he refused to admit responsibility by continually attacking the jurisdiction of the court. Moreover, his sentence was well below the life imprisonment statutory maximum for Count 2, the continuing financial crimes enterprise offense. Therefore, this claim has no merit.

### D. Motion to Amend

In his Motion to Amend, Hameed seeks to add to his Motion to Vacate Sentence a claim that his "guilty plea" was not taken in full compliance with Fed. R. Crim. P. 11. This claim has no merit because, as the record clearly shows, he did not plead guilty. Rather, after being advised multiple times of his right to trial where he could contest the facts, Hameed insisted that the facts were not in dispute and that a trial was not necessary. When the government proffered its evidence, he did not contest a single fact. On the basis of his acquiescence to the facts, and the Court's rejection of his legal arguments, Hameed was found guilty. In essence, Hameed was found guilty on a stipulated record, not a guilty plea. Therefore, any inadequacy of a plea colloquy is not at issue in his conviction and not subject to

collateral review.

The second issue he seeks to raise is an additional claim of ineffective assistance of his standby counsel, who he alleges failed to advise him that he could object to the four-level leadership role enhancement included in the Presentence Report. That claim also has no merit because the record shows that Hameed refused to communicate with counsel. Moreover, given the pleas of all the co-defendants, there was abundant evidence in the record supporting the role enhancement, and Hameed has failed to point to any evidence in the record or proffered any evidence in the two pleadings at issue that would support not imposing that enhancement. Therefore, even if he or counsel had objected to the enhancement, such objections would have been futile. For these reasons, the Motion to Amend will be denied.

## CONCLUSION

Because Hameed fails to raise any meritorious issues in his Motion to Vacate Sentence, the motion will be dismissed by an Order to be issued with this Memorandum Opinion, and the same Order will deny his Motion to Amend.

Entered this 3rd day of May, 2011.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge